UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WOODBURN CONSTRUCTION CO.,

Plaintiff,

v.

ENCON PACIFIC, LLC, d/b/a CONCRETE PRODUCTS OF WESTERN WASHINGTON, LLC; and CONCRETE PRODUCTS OF WESTERN WASHINGTON, LLC,

Defendants.

———————————————————

ENCON WASHINGTON, LLC f/k/a CONCRETE PRODUCTS OF WESTERN WASHINGTON, LLC,

Counter-claimant,

v.

WOODBURN CONSTRUCTION CO.; COUNTY OF COWLITZ, WASHINGTON; and SAFECO INSURANCE COMPANY OF AMERICA,

Counter-defendants.

Case No. C05-5811FDB

ORDER GRANTING PLAINTIFF WOODBURN'S MOTION FOR PARTIAL SUMMARY JUDGMENT and DENYING DEFENDANT ENCON'S ALTERNATE MOTION TO CONTINUE

**INTRODUCTION**

This matter arose in the course of the construction of the Cowlitz County Jail Annex project. Concrete Products of Western Washington, LLC (now EnCon Washington, LLC) (hereafter CPWW) supplied and erected precast concrete wall panels for the project, and Woodburn Construction Co. (Woodburn) was the general contractor. The Contract and Amendment 1 were

ORDER - 1

entered into with Defendants when they were known as Concrete Products of Western Washington, and thus, are referred to hereafter as CPWW. The contract between CPWW and Woodburn was dated April 28, 2004; it recited, among other things, that "[t]ime is of the essence ... . so that the entire project may be completed in accordance with the contract documents" (Crouch Aff., Ex. 1 at 3.); and it provided that CPWW promised to prosecute its work "in a prompt and diligent manner in accordance with the schedule of work without hindering the work of the Contractor or any other Subcontractor." *Id.* The parties agree that Washington law applies.

Plaintiff Woodburn moves for partial summary judgment on liability and liquidated damages under Contract Amendment 1. In this motion, Woodburn seeks a ruling that: (1) Amendment 1 to the contract between Woodburn and Defendant CPWW is enforceable, (2) the legal effect of Amendment 1 is that CPWW owes Woodburn liquidated damages from October 11, 2004 until the precast panels CPWW supplied were completely erected on February 2, 2005, (3) the liquidated damages are $2,500 per day, as provided by the contract, and (4) none of CPWW's affirmative defenses are applicable to CPWW's liability for liquidated damages under contract Amendment 1.

Woodburn emphasizes that it is not seeking a ruling regarding any alleged liability of CPWW for Woodburn's other damages or the amount of other damages, nor as to the applicability of CPWW's affirmative defenses to any of Woodburn's other claims. Woodburn's current motion is directed only to the issue of CPWW's liability for liquidated damages pursuant to Amendment 1 for failure timely to erect the precast concrete panels CPWW supplied for the project.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W.*

ORDER - 2

*Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

**ARGUMENTS AND DISCUSSION**

*Plaintiff Woodburn's Contentions and Arguments*

Plaintiff Woodburn contends that CPWW promised to begin delivering panels to the project not later than September 17, 2004 in an order and at a rate that would not delay erection of the panels by Woodburn's erection subcontractor, Ross Crane Rigging. (Crouch Aff. ¶ 3, Ex. 2 – 4.) CPWW failed to so deliver the panels and Woodburn informed CPWW that CPWW would be charged for any and all damages caused by its failure timely to deliver the panels and for delay asserted by Ross against Woodburn. (Crouch Aff. ¶ 4, and Ex. 5.)

On or about September 27, 2004 CPWW's project manager, Timothy Clark, suggested to Woodburn's Vice-President, Floyd Crouch, that CPWW take over Ross' scope of work (erecting the panels) in order to avoid having to pay Woodburn for Ross' damages for delay to Ross' scope of work. (Crouch Aff., ¶ 5.) Woodburn prepared Amendment 1 pursuant to its agreement with CPWW, and CPWW entered into Amendment 1 on September 27, 2004. ( CPWW's Answer, ¶ 9; Crouch Aff., ¶ 7 and Ex. 6 (Amendment 1).) Amendment 1 provides, in relevant part, that:

> It has been mutually agreed between Floyd Crouch Wcc) and Timothy Clark ( CPWW ) that Concrete Products of Western Washington is taking over the erection of the precast panels scope of work in its entirety at zero added cost. This has been done to mitigate damages from Woodburn Construction's subcontractor, Ross Crane & Rigging to Concrete Products of Western Washington.
>
> All panels are to be erected and completed no later than Monday October 11, 2004. Per the contract, liquidated damages will begin to accrue for every day after October 11, 2004 that erection is not complete.
>
> **Change to Contract Amount: $0.00**
> **Total Contract Amount: $547,500.00**

(Crouch Aff., Ex. 6 (emphasis in original.) Woodburn contends that CPWW did not complete the panel erection by October 11, 2004; rather CPWW finished erecting the panels on February 2, 2005. (Crouch Aff. ¶ 8) The Contract provides for liquidated damages of $2,500 per day. (Crouch Aff.

ORDER - 3

Ex. 1 at 9.) Consequently, Woodburn contends that CPWW is liable to Woodburn for liquidated damages in the amount of $285,000.

*Defendant CPWW's Response*

CPWW argues that there are genuine issues of material fact about the parties' intent in entering into the Contract Amendment, and thus, the meaning of the Amendment. There is no dispute that Clark ( CPWW ) and Crouch (Woodburn) had a discussion about the project delays on September 27, 2004, and there is no dispute that they agreed that CPWW would take over Ross Crane's erection work. There is, however, a dispute about what Woodburn gave in exchange for CPWW's promise to perform the remainder of Ross Crane's erection work. Woodburn, through Crouch, maintains that CPWW, through Clark, told him that "it would be cheaper for CPWW to erect the panels itself, on its own schedule, than to pay Ross' standby/delay damages." (Crouch Aff. ¶ 5 at 3:17-19.) CPWW, on the other hand, asserts through Clark that:

> "In this same telephone conversation, Mr. Crouch and I agreed that CPWW would perform the rest of Ross Crane's erection work in exchange for the balance due under Ross Crane's contract (approximately $50,000) and a release of all claims for delay attributable to CPWW through October 11, 2004. In addition, I agreed that CPWW would produce, deliver and erect the panels no later than October 11, 2004."

(Clark Aff. ¶ 17, 5:17-21.) CPWW contends that the contract amendment was drafted and faxed to Clark, who read the amendment, but did not believe that it stated what Woodburn now claims. Specifically, Woodburn refuses to credit or pay CPWW the balance of the Ross Crane contract and insists that CPWW had an absolute duty to complete the panel erection process by October 11 no matter what caused the delay. CPWW argues that the words "zero added cost" in the Amendment could reasonably mean that Woodburn would not incur any additional cost to that which it would have had if Ross Crane had been paid its contract amount reading the Amendment to mean that CPWW was entitled to the balance of Ross Crane's contract.

CPWW also argues that there was no consideration for the Amendment, or that there are material issues of fact as to whether consideration exists. Woodburn's argument that consideration

ORDER - 4

for the Amendment was Woodburn's forbearance to assert Ross Crane's claim for delay damages assumes, according to CPWW that (1) Ross Crane was delayed, (2) Ross Crane had a valid claim against Woodburn for that delay, (3) CPWW was responsible for the delay, and (4) Woodburn had a valid claim against CPWW based on Ross Crane's alleged claim.

CPWW also argues that there are genuine issues of material fact concerning both the causes and duration of the precast panel erection delay, and asserts delays caused by Woodburn, Ross Crane, and the architect/engineer.  Moreover, CPWW asserts that it substantially performed because it erected the majority of the panels by early December 2004 with only one panel erected on February 2, 2005.

CPWW also argues that Woodburn's statement that it will seek other damages as well, renders the liquidated damages provision an unenforceable penalty rather than a genuine liquidated damages provision.

CPWW argues that there are factual issues concerning two misrepresentations.  First, is the issue of whether Woodburn's Crouch  misrepresented in the September 27, 2004 conversation with Clark that CPWW was responsible for Ross Crane's delay damages when Woodburn knew that the contract with Ross had been absolved and Woodburn's and Ross's claims settled.  Second, is the misrepresentation when Crouch failed to disclose to Clark that Cowlitz County was about to issue a stopwork order, which was relevant information, since Clark and Crouch were negotiating the completion date for CPWW precast panel erection work.

CPWW also argues factual issues exist concerning Woodburn's having interfered with CPWW's performance by failing to properly coordinate its work and the work of its subcontractors with CPWW's work.

CPWW argues that Woodurn failed to mitigate its own damages by imposing an onerous review process concerning repairs to the precast panels, thus delaying CPWW's ability to perform the repairs and complete the erection work in an efficient manner.

ORDER - 5

Finally CPWW argues that it is entitled to setoff damages attributable to its counterclaims against Woodburn's claim for liquidated damages, and issues of fact exists concerning this defense.

***Woodburn's Reply***

Woodburn concedes that CPWW has raised a genuine issue of material fact concerning Woodburn's entitlement to damages for breach of Amendment 1. Woodburn argues that what is still at issue in this motion is whether Amendment 1 is enforceable and whether any of CPWW affirmative defenses bar summary judgment regarding whether Amendment 1 is enforceable.

First, Woodburn argues that it is undisputed that Amendment 1 was executed by the parties. Any defense that Woodburn failed to perform some obligation is for CPWW to assert and prove, not Woodburn. Further, the question as to whether CPWW breached Amendment 1 is irrelevant to the question of whether it is enforceable.

Next, Woodburn addresses CPWW's contention that it is entitled to the balance due under Ross Crane's contract, and that the terms "at zero added cost" could reasonably mean that Woodburn would not incur any additional cost to that which it would have had if Ross Crane had been paid its full contract amount. In rejecting this argument, Woodburn argues that while extrinsic evidence is admissible as to the entire circumstances under which the contract was made as an aid in ascertaining the parties' intent," *Berg v. Hudesman*, 115 Wash.2d 657, 801 P.2d 222, 229 (1990), this "context rule" (as *Berg* refers to it) allows parol evidence "with the view of elucidating the meaning of the words employed." *Id.* Thus, Washington's "context rule" is stated:

> Parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. **Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument. It is the duty of the court to declare the meaning of what is written, and not what was intended to be written.**

ORDER - 6

*Id.* (emphasis added). Therefore, argues Woodburn, it is improper to import CPWW's contention that it was entitled to the balance due under Ross Crane's contract into Amendment 1. This is especially so, concludes Woodburn, because Amendment 1 not only provides that there would be "zero added cost" to Woodburn, but also that there would be no additional amount in CPWW's contract with Woodburn because Amendment 1 also provides: Change to Contract Amount: $0.00 and Total Contract Amount: $547,500.00. The contract amount remained the same as before Amendment.

Woodburn argues that CPWW's assertion that Woodburn had to demonstrate a valid claim that CPWW actually was liable to Woodburn for Ross Crane's backcharges fails because, under Washington law, forbearance from asserting a claim is valid consideration even if the claim was doubtful at the time the agreement was reached. *See Johnson v. S.L. Savidge, Inc.*, 43 Wash.2d 273, 276-77, 260 P.2d 1088 (1953). Moreover, Mr. Clark specifically states that the dispute over Ross Crane backcharges "led me to want to get a resolution to minimize the business risk." (Clark Aff. ¶ 16, 5:10-11.)

Woodburn concedes that there is a genuine issue of material fact as to the amount of damages to which Woodburn is entitled for breach of Amendment 1, at this point, but that CPWW's assertions that others were responsible for delays or that the liquidated damages provision is enforceable or not as a penalty does not relate to the issue of the enforceability of Amendment 1.

Woodburn asserts that neither the contention that it failed to inform CPWW of the agreement with Ross Crane, which allowed it to agree with CPWW to perform Ross Crane's scope of work, nor the contention that Woodburn knew that the owner was planning to enter a stop-work order matters. Woodburn argues that reliance on misrepresentations is unreasonable as a matter of law between parties negotiating an agreement in the context of a contentious adversarial relationship if the alleged misrepresentations or omissions were at the heart of the issues being resolved in the adversarial relationship. *Guarino v. Interactive Objects, Inc.*, 122 Wash. App. 95, 122, 86 P.3d

ORDER - 7

1175 (2004). Thus, Woodburn, argues that both CPWW's responsibility for damages due to delays to Ross Crane, and issues related to whether CPWW's panels complied with the contract specifications were at the heart of the issues being resolved by CPWW's agreement to take over Ross Crane's scope of work, citing Clark's affidavit, ¶¶ 16 and 18. Accordingly, Woodburn argues that CPWW had no right to rely on Woodburn accurately to represent what damages there were for CPWW to avoid, whether some action of the owner would interfere with CPWW's progress, or whether CPWW would be able to erect the panels by any particular date. It was CPWW's duty to investigate facts it deemed appropriate to determine whether the terms were acceptable.

Finally, Woodburn argues that the remaining issues – concerning prevention of performance, mitigation of damages, and setoffs – relate only to entitlement to damages, not to enforceability of Amendment 1.

## CONCLUSION

It is beyond dispute that Amendment 1 exists and was executed by the parties. CPWW has not made any showing that Woodburn has failed to fulfill an obligation it had under Amendment 1 that would be a defense to CPWW's obligation to perform.

There is no dispute that Clark and Crouch had a discussion about the project delays on September 27, 2004 and there is no dispute that they agreed that CPWW would take over Ross Crane's erection work. There is a dispute over what Woodburn gave in exchange for CPWW's promise to perform the remainder of Ross Crane's panel erection work. The Court cannot agree with CPWW's contention that under Amendment 1, it would perform the remainder of Ross Crane's work in exchange for the balance due under Ross Crane's contract. To read Amendment 1 as CPWW urges, would be to import an element into the Amendment that is not expressed therein and is contrary to Washington law. *See Berg v. Hudesman*, 115 Wash.2d 657, 801 P.2d 222, 229 (1990). No additional amount was to be added to CPWW's contract as evidenced by the language in Amendment 1 that "Change to Contract Amount: $0.00" and "Total Contract Amount:

ORDER - 8

$547,500.00." Under the original contract between Woodburn and CPWW, the amount of $547,500.00 remained the same where the "price" is indicated under the Scope of Work provision for CPWW under the original contract.

There is adequate consideration for Amendment 1, because: "It is not essential, to constitute such consideration, that the claim be indisputable or legally certain; where the validity of the claim is doubtful, the existence of a possibility of recovery is sufficient." *Johnson v. Savidge*, 43 Wash.2d 273, 276, 260 P.2d 1088 (1953). Mr. Clark stated in is affidavit that he wanted "to get a resolution to minimize the business risk of being held responsible for the delays to that point. (Clark Aff. ¶¶ 16 & 18.)

There is no dispute that there are genuine issues of material fact as to the amount of damages to which Woodburn is entitled for breach of Amendment 1, and whether certain damages should be considered a penalty, but that is a question to be addressed in the future and which does not affect the issue of enforceability of Amendment 1 now before the Court. Additionally, the Court agrees that the issues of prevention of performance, mitigation of damages, and setoffs relate to entitlement to damages and not to the enforceability of Amendment 1.

The Court does not agree with CPWW's arguments concerning (1) fraudulent inducement in Woodburn's failing to inform CPWW of the September 23, 2004 agreement with Ross Crane to absolve the contract between Woodburn and Ross, and (2) the misrepresentation in failing to inform CPWW that Cowlitz County was about to issue a stopwork order. Certainly, CPWW's responsibility for damages for delay to Ross Crane was an issue being resolved by Amendment 1. CPWW's responsibility for damages due to delay to Ross Crane as well as issues relating to whether the panels produced by CPWW complied with contract specifications were part of the context of an adversarial relationship between Woodburn and CPWW when forming Amendment 1. Clark recognized that CPWW's ability to comply with the October 11, 2004 panel erection date was contingent upon whether "the design was accurate and complete and the Project was properly

ORDER - 9

coordinated by WCC [Woodburn]." (Clark Aff., ¶ 18, 5:26-6:1.) CPWW had no right to rely on the alleged misrepresentations under these circumstances because the alleged misrepresentations or omissions were at the heart of the issues being resolved in the adversarial relationship that produced Amendment 1. *See Guarino v. Interactive Objects, Inc.*, 122 Wash. App. 95, 122, 86 P.3d 1175 (2004).

For the foregoing reasons, the Court finding no genuine issue of material fact, Plaintiff Woodburn is entitled to summary judgment that Amendment 1 is enforceable. The Court also concludes that Defendant's alternative motion for a continuance of Plaintiff's Motion for Partial Summary Judgment should be denied for the reasons advanced by Woodburn.

ACCORDINGLY, IT IS ORDERED:

(1) Plaintiff Woodburn's Motion for Partial Summary Judgment [Dkt. # 23] is GRANTED as to the enforceability of Amendment 1; there are genuine issues of material fact as to the amount of damages and as to whether or not certain damages would render liquidated damages improper as a penalty.

(2) Defendant/Counter-claimant Encon Washington, LLC's Alternate Motion To Continue Pursuant to FRCP 56(f) [Dkt. # 30] is DENIED.

DATED this 17th day of August, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 10