1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
9                      AT TACOMA

10   WOODBURN CONSTRUCTION CO.,

11                Plaintiff,
                                                Case No. C05-5811FDB
12         v.
                                                ORDER GRANTING PLAINTIFF
13   ENCON PACIFIC, LLC, d/b/a Concrete         WOODBURN'S MOTION FOR
     Products of Western Washington, LLC; and   PARTIAL SUMMARY JUDGMENT
14   CONCRETE PRODUCTS OF WESTERN               AGAINST ENCON WASHINGTON'S
     WASHINGTON, LLC,                           COUNTERCLAIMS
15
                  Defendants.
16   _____

17   ENCON WASHINGTON, LLC f/k/a Concrete
     Products of Western Washington, LLC,
18
                  Counter-claimant,
19
           v.
20
     WOODBURN CONSTRUCTION CO.;
21   COUNTY OF COWLITZ, WASHINGTON;
     and SAFECO INSURANCE COMPANY OF
22   AMERICA,

23                Counter-defendants.

24

25

26   ORDER - 1

1

**INTRODUCTION**

2      Plaintiff, Woodburn Construction Company (Woodburn) , was the general contractor on a

3   construction project known as the Cowlitz County Jail Annex ("the project").  The precast concrete

4   panels that comprise the jail walls were provided by EnCon Washington (EnCon) as a subcontractor,

5   which then erected the walls pursuant to contract Amendment 1.

6      In addition to erecting the precast panel walls, EnCon  performed other work on the precast

7   panels.  Woodburn's position is that this other work was remedial work required for the panels to

8   meet the project specifications. EnCon's position is that Woodburn directed it to perform the extra

9   work, EnCon performed the work, and under its Subcontract, EnCon is entitled to be paid.

10      Woodburn brings a motion for partial summary judgment against EnCon Washington's

11   counterclaims arguing failure timely (if at all) to comply with any of the contractual provisions

12   requiring notice of claims and written notice of the amount of claims (the "claim presentation

13   procedures").  Additionally, Woodburn moves to preclude the use of the identified counterclaims  as

14   part of EnCon's setoff defense; that is, Woodburn challenges only the use of EnCon's affirmative

15   claims for compensation in excess of the original contract amount.

16

**SUMMARY JUDGMENT STANDARD**

17      Summary judgment is appropriate if  "the pleadings, depositions, answers to interrogatories,

18   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

19   any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

20   Civ. P. 56(c).

21      Summary judgment should not be granted unless the moving party establishes that there are

22   no genuine issues of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P.

23   56(c).  If the moving party shows that there are no genuine issues of material fact, the non-moving

24   party must go beyond the pleadings and designate facts showing an issue for trial.  *Celotex Corp. v.*

25   *Catrett*, 477 U.S. 317, 322-323 (1986).  A scintilla of evidence, or that which is merely colorable and

26   ORDER - 2

1   not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of*

2   *America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989), *cert. denied,* 493 U.S. 809 (1989).

3          Summary judgment is proper if a defendant shows that there is no evidence supporting an

4   element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Failure of

5   proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can

6   exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

8          Woodburn argues that it is entitled to summary judgment for two reasons as follows:

9          First, EnCon failed to present any evidence of written notice of any of its claims, followed by

10  written notice of the amount of the claims, all as required by the subcontract's claim presentation

11  procedures, Article 4, ¶ 4.3, which applies to the claims and counterclaims, not ¶ 4.1.

12         Second, EnCon failed to present any facts showing waiver by Woodburn of ¶ 4.3's

13  requirements as to EnCon.   Woodburn argues that contrary to EnCon's position that entering into

14  Change Order 1 is evidence of waiver of claim presentation procedures, a change order cannot waive

15  claim presentation procedures because the two are governed by separate subcontract Paragraphs of

16  Articles 4: ¶ 4.1 for changes and ¶ 4.3 for claims.   Additionally, Woodburn argues that any assertion

17  that Woodburn waived claim presentation procedures for other subcontractors, even if true (which

18  Woodburn asserts it is not), is immaterial to waiver as to EnCon.

19         For the reasons discussed below, the Court concludes that Woodburn properly applies the

20  Subcontract's provisions as to EnCon's counterclaims that are the subject of Woodburn's Motion for

21  Partial Summary Judgment.

22         Article 4 of the Subcontract, entitled "Changes In the Work," applies in determining the

23  issues presented in Woodburn's Motion, and determining the meaning of the provision presents a

24  question of law.   The words of this Subcontract should be interpreted as they normally would be in

25  the context of the construction industry.   Article 4 of the parties' Subcontract provides as follows in

26  ORDER - 3

pertinent part (excluding terms negotiated out of Woodburn's standard subcontract form):[1]

> 4.1 The Contractor and Subcontractor agree that the Contractor may add to, or deduct from, the amount of work conferred by this agreement, and any changes so made in the amount of work involved, or any other parts of this agreement, shall be by a written amendment hereto setting forth in detail the changes involved and the value thereof which shall be mutually agreed upon [sic] the Contractor and Subcontractor. The Subcontractor agrees to proceed with the work as changed when so ordered in writing by the Contractor so as not to delay the progress of the work. If the Contractor requests a proposal of cost for change, the Subcontractor shall promptly comply with such request.

> 4.2 Subcontractor shall be entitled to receive no extra compensation for work or materials or changes of any kind ordered by the Contractor or any of his representatives unless a change order therefor has been issued in writing by the Contractor.

> 4.3 The Subcontractor agrees that no claim for additional services rendered or for materials furnished by the Subcontractor to the Contractor shall be valid unless notice is given to the Contractor prior to the furnishing of the services or material or unless written notice of the claim therefore is given by the Subcontractor to the Contractor prior to the occurrence of such work, with the amount of the claim to be given in writing by the Subcontractor within thirty days of the claim notice.

> 4.4 The Subcontractor will make all claims for extra compensation and for extension of time to the Contractor promptly in accordance with this article and consistent with the contract documents.

Under Article 4, ¶ 4.1, Woodburn may change EnCon's work by written "amendment" detailing changes and their value, mutually agreed to, and EnCon has to perform the work without delaying the Project. Woodburn may request a cost proposal from EnCon, and if it does, EnCon must provide it. There was no mutual agreement as to either the value or compensability of change made to EnCon's work. Nevertheless, reading the second sentence requiring the Subcontractor to proceed with the work with Article 3 "Prosecution of the Work" wherein it is stated that "time is of the essence for both parties "so that the entire project may be completed in accordance with the contract documents," EnCon was obligated to proceed with the work directed by Woodburn even

---

[1]The relevant provisions of the Subcontract between the parties is provided as Exhibit 2 to the Affidavit of Sean C. Gay for EnCon and as Exhibit 1 to the Affidavit of Floyd Crouch for Woodburn.

ORDER - 4

1   without the mutual agreement.

2       Under ¶ 4.2, EnCon may receive no extra compensation for changes of any kind unless there

3   is a written change "order."

4       Under ¶ 4.3, EnCon is required to give notice to Woodburn that the work ordered is

5   compensable before it performs the work, then within 30 days, EnCon must provide notice of the

6   amount of its claim for the work ordered.  Thus, in the situation where the Subcontractor was

7   ordered to do extra work for which there was no agreement under ¶ 4.1 nor a change order under ¶

8   4.2, and where the Subcontractor proceeds with the work pursuant to ¶ 4.1 and Article 3 regarding

9   "Prosecution of the Work," the Subcontractor who believes that it is entitled to additional

10  compensation may prosecute such a claim if the Subcontractor – prior to doing the work – gives

11  notice, written or otherwise, and within thirty days submits the amount of the claim in writing.  To

12  argue that merely giving notice without any amount attached to the claim would omit material

13  information needed by the Contractor in order to resolve the claim.

14      Paragraph 4.4 emphasizes that claims for extra compensation must be made promptly.  This

15  paragraph harmonizes with Article 3 concerning prosecution of the work and time being of the

16  essence for both parties.

17      The Court agrees with Woodburn, that when there is a dispute about extra work such that a

18  mutually agreed to modification of the subcontract is not entered into, EnCon must give notice of the

19  dispute and its amount, that is, notice of its "claim" in order for the claim to remain valid.  Absent the

20  contractually required notices, Woodburn is entitled to assume that EnCon decided not to pursue any

21  dispute it may have raised, or that EnCon agrees that the work Woodburn ordered it to perform is

22  not compensable extra or changed work.  EnCon's Tim Clark stated in his deposition that he did not

23  tell Woodburn that he was going to charge for the disputed work and when asked,

24

25   "And it would have been important under industry standards to tell Woodburn that, wouldn't it?"

26  ORDER - 5

1   Mr. Clark answered, "That's correct."  (Crouch Aff., ¶ 2, Exhibit 9.)

2        EnCon has provided no evidence that it has complied with the Subcontract's claim

3   presentation procedures in Article 4, ¶ 4.3.  Information that EnCon did supply in support of its

4   argument is insufficient: (1) assertion of a "claim" during mediation that began August 23, 2005

5   occurred after EnCon completed its work and left the project on March 17, 2005; and (2) the five

6   pieces of correspondence listed on page 15 of its Response Memorandum provide no written notice

7   or substantiation of the amount of each of these "claims," assuming they are even timely.

8        Failure to agree on a change order under ¶ 4.1 does not bar the Subcontractor from seeking

9   compensation, because ¶ 4.3 provides the means to present a claim for additional materials or

10  services if notice is given to the Contractor prior to furnishing the services or material, and provided

11  that within 30 days of that notice, the amount of the claim is given to the Contractor in writing.  The

12  requirement that the Subcontractor perform the extra work so as not to delay the progress of work

13  on the project does not preclude the Subcontractor from proceeding under ¶ 4.3 to bring notice of a

14  claim and the additional amount sought.

15       Realistically, when the Contractor orders work to be performed that the Subcontractor

16  believes to be subject to compensation, the Subcontractor must make the Contractor aware of his

17  contention; otherwise, Woodburn is unable to know that EnCon believes that the work is

18  compensable as extra work as opposed to work within the scope of EnCon's original contract that

19  has not yet been performed or not yet been correctly performed.  There is no "Hobson's choice" to

20  do the work and forego compensation or hold up the work in order to seek compensation, as EnCon

21  argues; rather, if EnCon believes it is entitled to compensation, it must give notice of that fact and

22  the amount claimed then proceed to do the work.  Furthermore, ¶ 4.3 applies whether Woodburn

23  directed the work to be done or whether EnCon was supplying additional services or materials

24  without Woodward's order.  In either case, EnCon must follow the procedures of ¶ 4.3 to preserve

25  its right to seek extra compensation and EnCon must continue to perform its work on the project.

26  ORDER - 6

1  Woodburn correctly argues that the Notice provisions are not meaningless when Woodburn directs

2  EnCon to perform work,

3      because without notice of a claim, followed by notice of the amount of a claim,
       Woodburn may not know whether work it directs to be performed is considered by
4      Encon Washington to be extra work, and does not know whether Encon Washington
       intends to pursue a dispute regarding whether or not work Woodburn has directed is
5      extra work.  If Encon Washington fails to follow the claim presentation procedures, it
       signals its intent not to pursue any dispute, rendering subsequent attempts to claim
6      extra compensation invalid.

7  (Woodburn Reply, p. 15.)

8          As to the issue of waiver, EnCon has not presented clear and unequivocal evidence of waiver

9  of the Subcontract's claim presentation procedures.  The parties agree that "[u]nder Washington law,

10  contractors must follow contractual notice procedures unless those procedures are waived.  *Mike M.*

11  *Johnson, Inc. v. Spokane Co.*, 150 Wash.2d 375, 78 P.3d 161 (2003).  In *Mike M. Johnson*, the

12  construction company brought an action against the county alleging breach of sewer construction

13  contracts by failing to pay fees for additional work that was not included in the original contracts.

14  The Washington Supreme Court held that the county's actual notice of the contractor's claims did

15  not excuse the contractor from complying with the contractual claim procedures, and the letters

16  submitted by the contractor did not provide the information required by the contracts to support a

17  protest or a formal claim;  the county informed the contractor throughout correspondence between

18  them that the contractor's references to problems were insufficient for the county to deal with the

19  problems as claims.  The Court also held that neither (1)  the contractor's notifying the county that it

20  had problems nor (2) the county's conduct in corresponding with the contractor, evidenced the

21  county's intent to waive the contract's requirements.  Similar to EnCon's conduct in this case, the

22  contract administrator for Mike M. Johnson, Inc. testified that compliance with the contract

23  provisions was "too time consuming" and "Instead, Mr. Johnson's tactic was to "complain[] by letter

24  stating generally that MMJ expected to be paid for extra work, and then to sort through the mess at

25  the end of the contract."  *Mike M. Johnson, Inc. v. Spokane Co.*, 150 Wash.2d 375, 384 78 P.3d

26  ORDER - 7

161, 165 (2003).   When Tim Clark of EnCon agreed that under industry standards it would have

been important to tell Woodburn that EnCon was going to charge for extra work regarding

installation of the panels (EnCon believed they were not responsible for the need to do the extra

work),  he was asked

> Q.  And why didn't you tell Woodburn if you thought it wasn't your fault?
>
> A.  The club over our head was a done – a near fatal type of threat.
>
> Q.  And the fact that there was a club over your head you believe prevented you from simply giving notice that you thought it was Woodburn's fault and should be Woodburn's expense?
>
> A.  Our goal was that we were already under the gun from Woodburn and now the owner, and that our goal was to get the building built, minimize the expense, and then solve the problem between us later as to whose cost and how much.
>
> Q.  But you elected not to tell Woodburn that you thought it wasn't your responsibility?
>
> A.  I neglected to do that.

(Crouch Aff., Ex. 9, Clark Dep.)  The Court in *Mike M. Johnson* stated in holding that "actual

notice" is not an exception to and thus does not waive the requirement for contract compliance:

> Moreover, to hold that a contractor's notice of protest to the owner serves to excuse the contractor from complying with mandatory claim procedures would render contractual claim requirements meaningless.  There would be no reason for compliance, as the contractor could merely assert general grievances in order to secure a later claim.

*Id.* at 391, 78 P.3d at 169.

EnCon's asserted evidence of waiver in the form of letters of August 9 and 23, 2004

regarding Change Order 1 do not demonstrate waiver of the notice provisions of ¶ 4.3.  The Court

agrees with Woodburn that the although the letters recite the "amount" of EnCon's claims, they are

evidence of compliance with the claim presentation procedures, and, moreover, the letters resulted in

Change Order 1 and reflect enforcement of ¶ 4.1, not waiver of ¶¶ 4.3 and 4.4.

EnCon's argument regarding Woodburn's alleged treatment of other subcontractors is

ORDER - 8

1   unavailing.  It is Woodburn's conduct toward EnCon that this Court must review in order to

2   determine whether there was conduct inconsistent with its right to rely on the contract's claim

3   presentation procedures.  *See, e.g., Mike M. Johnson* 150 Wash.2d at 391-92, P.3d at 169.  For all

4   the reasons set forth in detail in Woodburn's response, EnCon's argument regarding waiver based on

5   Woodburn's conduct toward other subcontractors is rejected.

6          ACCORDINGLY, IT IS ORDERED: Plaintiff's Motion for Partial Summary Judgment

7   Against Encon Washington's Counterclaims [Dkt. # 43] is GRANTED.

8          DATED this 17th day of January, 2007.

9

10          _____
            FRANKLIN D. BURGESS
11          UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER - 9