UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WOODBURN CONSTRUCTION CO.,

    Plaintiff,

  v.

ENCON PACIFIC, LLC, d/b/a Concrete Products of Western Washington, LLC; and CONCRETE PRODUCTS OF WESTERN WASHINGTON, LLC,

    Defendants.
_____

ENCON WASHINGTON, LLC f/k/a Concrete Products of Western Washington, LLC,

    Counter-claimant,

  v.

WOODBURN CONSTRUCTION CO.; COUNTY OF COWLITZ, WASHINGTON; and SAFECO INSURANCE COMPANY OF AMERICA,

    Counter-defendants.

Case No. C05-5811FDB

ORDER DENYING PLAINTIFF WOODBURN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY, ENCON'S AFFIRMATIVE DEFENSES, AND ENCON'S COUNTERCLAIMS

    Plaintiff Woodburn Construction Co. (Hereafter "Woodburn") moves for partial summary

ORDER - 1

judgment on seven aspects of this case as follows:

**First**: Liability for breach of the subcontract between Woodburn and Defendants for nonconforming panels;

**Second**: Encon Washington's [hereafter "Encon"] affirmative defenses as to the breach issue;

**Third**: Liability for breach of Defendants' obligation timely to deliver conforming panels;

**Fourth**: Un-pled affirmative defenses that Encon may assert;

**Fifth**: Encon's First and Third Counterclaims alleging violation of Washington's Prompt Pay Act, RCW 39.04.250.

**Sixth**: Encon's *quantum meruit* counterclaim;

**Seventh**: All Encon's counterclaims (failure to pay remaining subcontract balance).

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Each of Woodburn's asserted bases for summary judgment will be discussed in turn below.

**DISCUSSION**

ORDER - 2

This case presents a complex construction contract dispute that arose out of the construction of the Cowlitz County Jail Annex project. Plaintiff Woodburn was the general contractor on the project. Defendant, EnCon[1], was the subcontractor that supplied and erected precast concrete wall panels for the project. The project architect produces drawings and specifications from which the subcontractor must make drawings with more detailed information. Problems surfaced when EnCon began to draft its shop drawings, and this necessitated communication with Woodburn regarding questions about the architect's drawings (Requests for Information "RFI"s).

EnCon submitted its final shop drawings on August 17, 2004 and requested a thorough review of them, since EnCon had been speaking directly with the architect/engineer firm (DLR)– with permission from Woodburn – as to the RFIs, and EnCon understood that these changes needed to be coordinated with the other subcontractors whose work would be affected by the panel details. Before the drawings were returned and approved on or about September 17, 2004, Woodburn's Vice President, Floyd Crouch, wrote to inform EnCon on September 1, 2004 that it was assessing liquidated damages for late delivery of panels from August 17, 2004. EnCon responded and noted the risks of proceeding before its shop drawings were returned as approved, but began fabrication, and on September 18, 2004, the first panels arrived at the jobsite. Problems ensued almost immediately. Cowlitz County, on recommendation from the architectural firm, issued a "stop work order on September 29, 2004.

EnCon contends that a combination of mistakes in the architectural drawings, changes made by the architect, and the lack of coordination of shop drawings by Woodburn caused the problems. Nevertheless, EnCon further contends that it satisfactorily provided all panels for the project and that its precast panels were ultimately accepted by Cowlitz County and are part of the completed project.

---

[1]Various entity names for the defendant are used in this case, as EnCon formerly did business as Concrete Products of Western Washington, LLC, and the propriety of naming Encon Pacific, LLC earlier surfaced as an issue. "EnCon" will be used to refer to the Defendant herein.

ORDER - 3

### *1. LIABILITY FOR BREACH OF SUBCONTRACT*

Woodburn argues that the subcontract unambiguously incorporates the prime contract provisions concerning the precast panels to define the scope of both Encon's work and obligations:

> 1.1 The Contractor employs the Subcontractor as an independent Contractor, to perform the following part of the work, which the Contractor has contracted with the Owner to provide on the project: *As described in Exhibit "A". Subcontractor agrees to perform such part of the work (hereinafter called "subcontractor's work")* under the general direction of the Contractor and subject to the final approval of the Architect / Engineer and/or other specified representative of the Owner, *in accordance with the contract documents.*

(Coleman Decl., Ex. 1, (Subcontract).) Woodburn contends that pursuant to the subcontract which incorporated the prime contract, Encon was obligated to produce shop drawings, stamped by a Washington Engineer, and produce panels that met the tolerance and finish requirements of Section 03411 of the prime contract. (Coleman Decl., Ex. 2, p. 2.) Woodburn also contends that it was not obligated to check the production shop drawings, as it transferred that obligation to Encon. *Id.* Ex. 4. Thus, Woodburn concludes that whether the panels failed to conform to the standards in prime contract Section 03411 because the production shop drawings were inaccurate or because the panels were not produced in accordance with the production shop drawings to the extent that they were accurate, Encon breached the subcontract by providing non-conforming panels.

EnCon has raised issues concerning Woodburn's own performance under the contract regarding review of EnCon's shop drawings, preparation of proper work schedules, coordination of EnCon's work with the other subcontractors, and proper payment of amounts due EnCon. Moreover, EnCon has submitted evidence sufficient to withstand summary judgment since the panels it produced were ultimately accepted by Cowlitz County, and that the initial problems with the panels is a matter disputed by the parties, precluding summary judgment. EnCon also points to a problem with Woodburn's view of the "incorporation by reference" provision, as it would lead to an absurd result. Also, EnCon argues that Woodburn's interpretation would require EnCon to coordinate the work of all the other subcontractors, a notion that seems out of synch with the duties of a general

ORDER - 4

contractor vis-a-vis a subcontractor. The same problem arises with Woodburn's view of its duties regarding the shop drawings. The Subcontract language, at paragraph 3.11 indicates that the contractor is responsible for substantively reviewing the shop drawings; in fact, the first sentence of that paragraph was stricken: "The subcontractor is solely responsible for review and approval of submittals." Moreover, EnCon has shown that any review of the shop drawings had to take into consideration the architect's changes resulting from the RFIs from EnCon.

As to the engineer's stamp on the drawings, EnCon disputes that this is a material fact and furthermore submits that it fulfilled that provision by having its Washington state registered professional engineer analyze and stamp his analysis as to the handling and erection forces, as that is what EnCon was responsible for under Specification Section 03411, part 1.4C, which states that EnCon is only responsible for "[a]dditional reinforcing for erection and handling stresses, if required ...."

Woodburn's motion for summary judgment on the issue of liability for breach of the subcontract is denied.

### *2.  AFFIRMATIVE DEFENSES TO LIABILITY*

Encon's affirmative defenses at issue are as follows:

**First**, Woodburn failed to state a claim for breach of contract;

**Fourth**, Woodburn failed to cooperate, which prevented Encon from performing.

**Fifth**, Woodburn failed to provide notice of its claims;

The **Second** and **Third** affirmative defenses, relate to Amendment 1, which is not at issue (the Court having disposed of these defenses when it granted Woodburn summary judgment as to the enforceability of Amendment 1) and Woodburn does not move against the **Sixth** (mitigation of damages) nor the **Seventh** (right to a setoff) at this time as these affirmative defenses do not relate to liability, but to damages.

**First:  Failure to State a Claim.** The parties agree that there is an issue for trial on this

ORDER - 5

claim.

**Fourth: Failure to Cooperate.** Woodburn argues that Encon's assertion that Woodburn failed to timely respond to requests for information ("RFIs") must fail because the subcontract provides that:

> 1.4 Should any question arise with respect to the interpretation of the drawings and specification, such question shall be submitted to the Contractor in the form of a "request for Information: on the form provided by the Contractor. The Subcontractor shall follow the decision of the Contractor.

(Coleman Decl., Ex. 1.) In spite of this requirement, Encon contacted the Architect directly to have RFIs answered, and this itself was a breach of the subcontract. Encon's assertion that Woodburn failed to "coordinate" Encon's production shop drawings with the production shop drawings of other subcontractors is without basis in the contract, and, additionally, Encon sought and received Change Order 1 compensating EnCon Washington for performing this exact coordination.

EnCon has submitted evidence that because work must stop on the portion of the work affected by the error or omission discovered by the subcontractor; the subcontractor then submits an RFI to the general contractor who, in turn, presents the question to the architect or engineer. Because there were several RFI letters to Woodburn, the process was slow either owing to Woodburn's actions, or the actions of the architect or engineering firm (DLR) or both. Therefore, EnCon's evidence indicates that Woodburn gave EnCon permission to communicate directly with DLR to obtain prompt answers to the RFIs. EnCon asserts that Woodburn failed to coordinate changes directed by DLR with other subcontractors. As a result, EnCon contends that it was unable to proceed efficiently with its performance.

EnCon has submitted sufficient evidence to prevent summary judgment on the issue of failure to cooperate.

**Fifth: Failure to Provide Notice of Claims.** Woodburn argues that Encon's contention that Woodburn failed to provide notice of its claims is defeated by the subcontract's notice provision,

ORDER - 6

which provides:

> 8.6 The Contractor agrees that no claim for *services rendered or materials furnished by the Contractor to the Subcontractor* shall be valid unless notice is given to the Subcontractor not later than the last day of the calendar month following that in which the claim originated.  The amount of such claim shall be given in writing by the Contractor as soon as practicable.

Woodburn argues that its claim is not, primarily, for services rendered or materials furnished by Woodburn to Encon.  Woodburn asserts it performed Encon's punch list work after Encon refused in writing to perform the same.  Woodburn's Vice President, Floyd Crouch states in his declaration:

> 7. After Encon Washington demobilized from the project site, I notified it that it had punch list work to complete.  I also notified Encon Washington that if it did not return and perform its punch list work, Woodburn would perform it (or hire someone else to perform it) and charge Encon Washington for the costs in material and labor associated with performing this work for Encon Washington.  Encon Washington refused in writing to return to the project and perform its punch list work.  Accordingly, Woodburn hired another subcontractor to perform Encon Washington's punch list work.  Other than the punch list work just described, I am not aware of any "claim for services rendered or materials furnished by" Woodburn to Encon Washington that is part of Woodburn's claim on the project.

Woodburn argues that even if ¶ 8.6 were to be read to require notice of this kind of claim, Encon received timely notice of the claim and had an opportunity to complete the work itself or be liable for someone else doing it.

EnCon contends that Woodburn has revised its claim several times and has yet to provide its "final" claim.  Thus, until it does EnCon argues that it cannot determine whether it has grounds to assert the failure to provide notice defense.

Under the circumstances, Woodburn's motion for summary judgment on this claim is denied.

### 3. BREACH OF TIMELY DELIVERY OBLIGATION

Encon asserts that the "schedule" in its bid, incorporated into the subcontract as "Exhibit 'E'" is the schedule applicable to delivery of its panels to the project, and that delivery was, thus, to be in late October or November 2004.  Woodburn argues that while matter may be incorporated into a subcontract for a limited purpose, here Subcontract ¶ 1.1 incorporates "Exhibit E" for its description

ORDER - 7

of the scope of Encon Washington's subcontract work, and for no other purpose. Subcontract ¶¶ 3.1 and 3.2, of Article 3 "Prosecution of the Work," unambiguously provide that Encon is obligated to prosecute the work according to the schedule of work prepared by Woodburn, revised by Woodburn, or accelerated by Woodburn. Woodburn concedes that while there may be a dispute about what the schedule was – and Woodburn does not move for summary judgment on that issue – the subcontract terms provide that Encon was obligated to prosecute the work according to the schedule prepared, revised, or accelerated by Woodburn. In fact, Encon was responding to Woodburn's schedule in the examples cited in Woodburn's brief, p. 18. Submission dates in May 2004 were cited, with Encon General Manger Tim Clark stating on July 26, 2004 that "I am scheduling our shop to start panel production on August 17, 2004." Woodburn's Vice President, Floyd Crouch states in his declaration, ¶ 5:

> 5. During performance of the project, Woodburn provided schedules to Encon Washington for delivery of the panels. I understand that there may be a dispute about the earliest date by which Encon Washington was to deliver panels to the project. Notwithstanding any such dispute, I am certain that Encon Washington agreed to deliver panels to the project not later than September 17, 2004, in a sequence and quantity that would support Woodburn's erection plan. On September 17, 2004, Encon Washington did not deliver conforming panels to the project in a sequence and quantity that would support Woodburn's erection plan.

Later, Subcontract Amendment 1 provided that Encon was under an obligation to deliver and erect its panels by October 11, 2004:

> All panels are to be erected and completed no later than Monday October 11, 2004. Per the contract, liquidated damages will begin to accrue for every day after October 11, 2004 that erection is not complete.

(Coleman Decl., Ex. 11.) Encon did not complete the erection of conforming panels by October 11, 2004. (Crouch Decl., ¶ 6.)

Encon disputes that it breached the subcontract by failing to timely deliver panels and also disputes Woodburn's position that the schedule in Exhibit E incorporated into the subcontract from EnCon's bid proposal did not apply to EnCon's work. EnCon also asserts that there is a genuine

ORDER - 8

issue of material fact as to the responsibility for and duration of any delay on the Project for which EnCon may be responsible. EnCon points to the delay with respect to Woodburn's shop drawing review and approval as well as Woodburn's coordination with other subcontractors and asserts that these were conditions precedent to EnCon's timely performance.

There are genuine issues of material fact as to the EnCon's breach of its timely delivery option. Accordingly, Woodburn's motion for summary judgment on this issue is denied.

### *4. MISCELLANEOUS AFFIRMATIVE DEFENSES*

Woodburn seeks summary judgment on un-pled affirmative defenses such as Woodburn's accelerating Encon's performance, thus causing Encon to provide nonconforming panels, and Woodburn breached its obligation to check Encon's production shop drawings and that any mistakes, therefore, became Woodburn's responsibility.

Woodburn argues first, that as to any affirmative defenses that it has not pled in its answer are now barred, as the time to amend pleadings has passed.  Second, Woodburn argues that any non-pled affirmative defenses are barred by the Subcontract where it provides that all obligations related to precast panels, including the obligation to provide accurate production shop drawings, are Encon's responsibility, not Woodburn's. Subcontract ¶ 1.1 and Exhibit A to the Subcontract provide that Encon's scope of work includes all the work in Section 03411 of the prime contract, and Section 03411 requires dimensionally accurate production shop drawings. In turn, Subcontract ¶ 1.3 provides that "Subcontractor binds himself to the Contractor for the performance of the Subcontractor's work in the same manner as the Contractor is bound to the Owner for such performance under Contractor's contract with the Owner." There was no obligation for Woodburn to check Encon's shop drawings for accuracy.

This motion as to "not-yet-pleaded" defenses lacks merit as demonstrated in the foregoing discussion denying summary judgment to Woodburn on the above claims. Accordingly, Woodburn's motion for summary judgment as to the un-pled claims is denied.

ORDER - 9

### 5. PROMPT PAY ACT – RCW 39.04.250

EnCon amended its answer with leave of Court (Order entered February 27, 2007) to remove the Prompt Pay Act claim, thus, Woodburn's motion for summary judgment on this claim is moot.

### 6. QUANTUM MERUIT

Woodburn argues that because Encon's claims for extra-contractual compensation have been dismissed, its *quantum meruit* claim, which can only be for extra-contractual compensation, must be dismissed as well. EnCon responds that "Quantum meruit is an appropriate remedy where substantial change not within contemplation of the contracting parties occurs with a resulting benefit to one party and expense to the other." *MacDonald v. Hayner*, 43 Wn. App. 81, 84-85. Here, EnCon argues that it pleaded the alternative theory of quantum meruit on the contention that the myriad changes and onerous obligations imposed by Woodburn on Encon amount to a substantial change that relieves EnCon from the conditions of the original contract an entitles EnCon to make a claim for quantum meruit.

There is a genuine issue of material fact as to whether the basis for a quantum meruit claim exists; therefore, Woodburn's motion for summary judgment on this claim is denied.

### 7. FAILURE TO PAY SUBCONTRACT BALANCE

Woodburn argues that since the Court has already granted Woodburn summary judgment against Encon's counterclaims for extra-contractual compensation for Encon's failure to give the contractually required notice, Encon's counterclaims are limited to claims for contractual compensation. Woodburn's argument continues that Encon's counterclaims for contractual compensation are barred as affirmative claims for relief (as opposed to a setoff against Woodburn's damages) because Encon failed to provide lien waivers in a form satisfactory to Woodburn for those contractual amounts. Specifically, Subcontract ¶ 2.1 provides in relevant part: "Subcontractor will provide monthly-completed certified payrolls, lien waivers and supplier affidavits in a form satisfactory to the Owner and Contractor." Encon never provided satisfactory lien waivers for its

ORDER - 10

work on the project. (Declaration of Woodburn President Terence Withers, ¶ 2.)

EnCon responds that submitting lien releases would have been a meaningless and would have required a false verification. EnCon's President, James E. Sorensen states in his declaration about his correspondence with Woodburn's President, Terry Withers, with respect to EnCon receiving its subcontract balance [¶ 11]:

> ... Mr. Withers put me off by demanding lien releases from EnCon's subcontractors and suppliers and from EnCon itself. One of the release forms requested by Mr. Withers required that EnCon represent that it had received final payment, when it clearly had not. In fact, at the time EnCon had only been paid $98,879.20 of its subcontract amount, so EnCon could not and would not represent that it had been paid. I went back and forth with Mr. Withers about the lien release form, but it became apparent that Woodburn had no intention of paying EnCon or its subcontractors *any* sums, even if a release had been tendered in exchange. If at any time Woodburn had offered to pay EnCon the amount due, appropriate releases would have been tendered. In fact, I am ready and willing to tender an appropriate release should Woodburn offer to pay EnCon.

[Emphasis in original.] Mr. Sorensen also states that he is unaware of any bond or retainage claims on this project made by any of EnCon's subcontractors for amounts unpaid to them by EnCon.

Under these circumstances, Woodburn's motion for summary judgment on EnCon claims based on the lien waivers issue is denied.

NOW, THEREFORE, IT IS ORDERED: Plaintiff Woodburn's Motion for Partial Summary Judgment on Liability, Encon's Affirmative Defenses, and Encon's Counterclaims [Dkt # 99] is DENIED.

DATED this 22nd day of March, 2007.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 11